David Ben-Meir (SBN 192028)
David@benmeirlaw.com
BEN-MEIR LAW GROUP
3818 Sherview Dr.
Sherman Oaks, California 91403-5033
Tel: 818-903-0007
Fax: 818-788-1449

Omer Salik (SBN 223056)
osalik@carterarnett.com
CARTER ARNETT PLLC
111 Pier Ave., Suite 101
Hermosa Beach, California 90254

Attorneys for Plaintiff
Robby Cvejanovich

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBBY CVEJANOVICH, an individual, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>IMEMORIES LLC,<br><br>       Defendant. | Case No.:  26-6892<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Robby Cvejanovich ("Plaintiff"), on behalf of himself and all others similarly situated, hereby alleges the following at all times relevant to his complaint.

## I.    INTRODUCTION

1.    This action is brought against Defendant iMemories LLC ("iMemories" or "Defendant") for false and deceptive pricing practices in connection with Defendant's sale of digitization products and services on the website https://www.imemories.com/ (the "Website"). Defendant offers digitization services for VHS tapes and photographs through the Website and other online and retail channels.

2.    Unfortunately, Defendant advertises fake and inflated comparison reference prices to deceive customers into a false belief that iMemories is offering its products and services at deeply discounted bargain prices. For example, anyone visiting the Website on a given day may see products and services advertised with a struck-through or "regular" price displayed alongside a lower purported "sale" price. The products are offered for sale with a purported original or regular value alongside the purported sale offer. In doing so, Defendant misleads its customers into believing that they are receiving a significant discount from the ordinary price for these products and services. This is deception because Defendant rarely, if ever, sold in the recent past on the Website or elsewhere these products and services for the purported original or "regular" amount.

3.    Stated differently, Defendant's advertised "sales" are not really sales at all. It is a misrepresentation that Defendant repeats daily. The reference prices that Defendant advertises are fictitious and fake, because they are not original, regular, retail, or former prices. They are inflated prices posted to lure unsuspecting customers into jumping at a fictitious "bargain" and intended to mislead customers into believing that the value of the products they are buying are higher than reality. That is, Defendant engages in this deceptive advertising and pricing scheme to give customers the false impression that they are getting a deal or bargain when in reality they are being swindled by fake sales and promotions. Defendant exacerbates this deception by advertising that its purported sales are limited in time, where in reality the same or substantially similar "sales" are offered continuously or almost continuously.

CLASS ACTION COMPLAINT

4. For example, the Website advertises that its "Safeship Kit" is "regularly" sold for "$29.99" and is being sold at a 50% discount for $14.99. Further, the Website misleads consumers into believing that digitization services are included with the Safeship Kit without disclosing to consumers that they will be charged separately for each tape and photograph for digitization services.

5. As a result, customers are deceived into spending money they otherwise would not have spent, purchasing products they otherwise would not have purchased, spending more money for products than they otherwise would have absent the deceptive marketing, and/or are receiving a value less than bargained for.

6. By this action, Plaintiff seeks to put an immediate end to Defendant's untruthful marketing practices and recover restitution and damages on behalf of all persons who have fallen victim to Defendant's sham sales by purchasing products on the Website from June 2022 to the present.

## II. PARTIES

7. Plaintiff Robby Cvejanovich is a citizen of the State of California, residing in this District.

8. On information and belief, Defendant iMemories LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 9160 E. Del Camino Drive, Suite B1 Scottsdale, AZ, doing business through its website www.imemories.com.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

10. This Court has personal jurisdiction over Defendant, because Defendant conducts professional and commercial activities in California on a substantial, continuous, and systematic

CLASS ACTION COMPLAINT

basis, including the sale and shipment of products to California consumers through the Website and providing services to residents in California, and therefore Defendant is subject to the general jurisdiction of the courts in this state.

11.     The claims asserted in this complaint arise out of or are related to Defendant's professional and commercial activities within California, including the sale and delivery of products and services to Plaintiff in this District, and therefore Defendant is subject to the specific jurisdiction of the courts of this state.

12.     Venue is proper in this Court because Plaintiff resides in San Francisco and the acts giving rise to Plaintiff's claims occurred in substantial part in this District.

## IV.    APPLICABLE LAW

13.     Plaintiff is a citizen and resident of California. He accessed the Website and ordered Defendant's product from California and received the product in California.

14.     California's substantive laws may be constitutionally applied to the claims of Plaintiff under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

15.     California has an interest in regulating Defendant's conduct under its laws, and Defendant's engagement in the challenged conduct directed at and affecting California consumers renders the applicability of California law to the claims herein constitutionally permissible.

16.     The application of California laws is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff, and California has a greater interest in applying its laws here than any other interested state.

## V.    GENERAL ALLEGATIONS

17.     On information and belief, iMemories is an online retailer of digitization services offering to convert consumers' old videotapes and photographs into digital copies.

18.     Defendant's business model relies on deceiving customers with fake sales. On a

CLASS ACTION COMPLAINT

typical day, Defendant prominently displays on the Website a 50% off sale with "regular" reference prices alongside purportedly discounted sale prices, creating the false impression that the products and services are being offered at a substantial markdown.

19.    Many of the products/services Defendant advertises are represented as being marked down from a substantially higher reference price. The supposed markdowns are represented to the customer by prominently displaying a struck-through "regular" price next to the sale price. Defendant employs these deceptive tactics to convey to customers that the product/service had been offered in the recent past at the reference price, but is being offered to the customer at a substantial discount for a limited time.

20.    However, this "regular" price is almost always, if not always, a falsely inflated price because Defendant rarely, if ever, sells its products at the purported "regular" price. Further, the "regular" price does not accurately reflect the prevailing price of Defendant's products/services offered by other retailers.

21.    The only purpose of the reference price is to mislead customers into believing that the displayed reference price is an original, regular, or retail price at which Defendant usually sells the product or previously sold the product in the recent past. As a result, Defendant falsely conveys that customers are receiving a substantial (e.g. 50%) markdown or discount, when in reality the alleged discount is false and fraudulent because the reference price is false and inflated.

22.    Compounding the deception, the Website will often display messages of urgency, such as limited-time offers, sale countdown timers, or notices that a particular deal will expire soon. Below is a representative example of such a purported time-limited sale on the Website by communicating that it is only available "today":

CLASS ACTION COMPLAINT

23.    This is designed to mislead customers into believing they need to rush to take advantage of the fake promotions, when in reality, Defendant runs an identical sale continuously or nearly continuously.

24.    Based on counsel's pre-filing investigation, Defendant offered its products and services on sale continuously or nearly continuously, and routinely displayed inflated reference prices that did not reflect prices at which Defendant or other sellers actually sold the products and services for any reasonably substantial period of time.

25.    For example, as can be seen from the internet archive, the Website advertised the same 50% off sale on June 17, 2024; September 2, 2024; September 4, 2024; September 12, 2024; and January 24, 2025. *See* Exhibits 1-5.

26.    Defendant's pricing practices on the Website illustrate the pervasive nature of these fake sales. Upon information and belief, the Website routinely displays products with inflated reference prices alongside purportedly discounted sale prices, creating a pattern and practice of deceptive reference pricing across Defendant's product and service lines.

27.    These pricing and advertising practices reflecting high-pressure fake sales are deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products/services from Defendant supposedly on sale and at a substantial and deep discount. The truth is that Defendant rarely, if ever, sells any of its purportedly discounted products at the

CLASS ACTION COMPLAINT

purported "regular" price. The reference price is, therefore, an artificially inflated price. In turn, the advertised discounts are thus nothing more than phantom markdowns.

28.    On information and belief, Defendant has more access to information regarding the historic sale prices and discount offers for the products offered for sale and sold on the Website than is available to Plaintiff.

a.    **Plaintiff's Purchase of Falsely Advertised Products From the Website**

29.    Plaintiff fell victim to Defendant's false advertising and deceptive pricing practices. On or about September 9, 2024, Plaintiff visited the Website to purchase a Safeship Kit. During the purchase process, Defendant displayed the product with a reference price that was higher than the sale price at which the product was offered, creating the false impression that Plaintiff was receiving a substantial discount from Defendant's regular or original price.

30.    Plaintiff saw on the Website a sale offer similar to the one shown in Exhibits 3 and 4.

31.    Plaintiff read and relied on the Website's representation that the Safeship Kit was being offered at a 50% discount from its purported "regular" price. This was material in driving his purchase. In particular, Mr. Cvejanovich read and relied on the representation that the product had a higher "regular" price displayed on the Website but was being offered at a 50% discounted sale price. Plaintiff paid $16.60 (including tax) for the Safeship Kit.

32.    Plaintiff also understood from the Website that his purchase of the Safeship Kit included digitization services of tapes and photographs that could fit into the kit. Only after purchasing the Safeship Kit was Plaintiff adequately informed that Defendant would charge an additional fee for the digitization of tapes and photographs and that his purchase of the Safeship Kit was only for the box and shipping materials without any digitization services.

33.    Based on these representations from Defendant, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Safeship Kit he was purchasing at the published "regular" price, that the reference price was the prevailing price and market value of the product that he was buying, that he was receiving the

CLASS ACTION COMPLAINT

advertised discount as compared to the reference price, that the advertised discount was only available for a limited time, and that the product would go back to retailing for the published regular price when the promotion ended.

34. The truth, however, is that the Safeship Kit that Plaintiff purchased was not substantially marked down or discounted, or at the very least, any discount he was receiving had been grossly exaggerated. That is because the Safeship Kit Plaintiff bought had not been offered for sale on the Website (or anywhere else) for any reasonably substantial period of time (if ever) at the full reference price. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Defendant had not offered the Safeship Kit sold to Plaintiff at the reference price and regularly sold that product at or near the price Plaintiff actually paid. Those reference prices were fake prices used in Defendant's deceptive marketing scheme.

35. Defendant knows that the reference prices on its Website are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on the Website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount.

36. Defendant thereby induces customers to buy products and services they never would have bought—or at the very least, to pay more than they otherwise would have if Defendant was simply being truthful about its regular prices.

37. Therefore, Plaintiff would not have purchased the product, or at the very least, would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase and paid as much as he did as a result of Defendant's misrepresentations in connection with the reference price that Plaintiff saw in making his purchase.

38. Plaintiff was harmed by Defendant's false advertising, because but for Defendant's misrepresentations, Plaintiff would not have made his purchase or would not have been willing to pay as much as he did.

39. Plaintiff would not have been willing to pay as much as he did for the product he purchased from Defendant had he received complete and truthful information relating to

CLASS ACTION COMPLAINT

Defendant's reference price on the Website. Plaintiff is entitled to restitution in at least the form of the difference between the price he actually paid and the price a reasonable consumer would have paid absent the reference price.

40. Plaintiff also would not have been willing to pay as much as he did for the Safeship Kit had he been adequately notified that it did not include any digitization services.

41. Plaintiff was further harmed because the value of the product he received was less than the price he paid. Specifically, as a result of Defendant's misleading practices, Plaintiff paid approximately $15 plus taxes for a product that had little or no value without digitization services.

42. Plaintiff was further harmed because he did not receive the expected discount or benefit-of-the-bargain advertised by Defendant. When Plaintiff and other members of the putative class purchase Defendant's products, they accept offers that Defendant made. Each offer was to provide products having a particular listed regular price and market value, and to provide those products at the discounted price advertised on the Website.

43. The Website lists the reference price of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices and the prices paid by Plaintiff and putative class members. These were specific and material terms of the contract. These promises were also express warranties: affirmations of fact about the products and a promise relating to the goods. Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased. Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with products that have a regular price and market value equal to the reference price displayed, and by failing to provide the promised discounts. Defendant breached its express warranties for the same reasons.

44. Plaintiff faces an imminent threat of future harm. Plaintiff would be interested in purchasing digitization products and services in the future, including from Defendant, if he could feel sure that Defendant's regular prices and advertising were honest and that sales were real. But without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future.

CLASS ACTION COMPLAINT

45. Further, Defendant's deceptive sale advertisements pollute the data regarding the regular prices for such products and services in the market as a whole, thereby harming Plaintiff and other consumers in their ability to evaluate the value of the deals being offered by Defendant and its competitors.

46. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims. Further, obtaining a full refund at law is less certain than obtaining a refund in equity.

47. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

48. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

49. The effectiveness of Defendant's deceitful pricing scheme is backed up by longstanding scholarly research. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56. For

CLASS ACTION COMPLAINT

this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing, as Plaintiff's claims here, had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

50.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id*.

51.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value…Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

52.     Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

53.     The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This

study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id*.

54. The clear inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendant is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given product's value and causing customers to spend money they otherwise would not have, purchase products and items they otherwise would not have, and/or spend more money for a product or service than they otherwise would have absent the deceptive advertising.

## VI. CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action individually and as a representative of all those similarly situated, on behalf of the below-defined class:

California Class: All persons who, while in the State of California, purchased one or more products or services from Defendant at a stated discount from a higher reference price during the period from four years preceding the filing of this Complaint through the present (the "Class Period").

Nationwide Class: All persons in the United States who purchased one or more products from Defendant at a stated discount from a higher reference price during the Class Period.

56. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57. Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with his motion for

class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

58.    This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class.

60.    **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

61.    **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.

62.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a)    Whether, during the Class Period, Defendant advertised false "regular" prices for products offered on the Website.

(b)    Whether, during the Class Period, Defendant advertised price discounts from false reference prices for products offered on the Website.

(c)    Whether the products advertised by Defendant during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were purportedly discounted.

(d) Does Defendant's deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(e) Does Defendant's deceptive pricing scheme using false reference prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*?

(f) Does Defendant's deceptive pricing scheme using false reference prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq.*?

(g) Does Defendant's deceptive pricing scheme using false reference prices constitute a violation of the California Consumer Legal Remedies Act California Civil Code §§1750, *et seq.*?

(h) Whether Defendant's use of fictitious "regular" prices on products during the Class Period constitutes false representations.

(i) Whether and when Defendant knew or learned that "regular" prices on products during the Class Period were false representations.

(j) What did Defendant hope to gain and gain from using a false reference prices?

(k) Whether Defendant's use of false reference prices on products during the Class Period was material.

(l) Whether Defendant had a duty to disclose to their customers that the reference prices were fake "regular" prices in furtherance of sham sales.

(m) To what extent did Defendant's conduct cause, and continue to cause, harm to the class members?

(n) Whether the members of the class are entitled to damages and/or restitution.

(o) What type of injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising?

(p) Whether Defendant's conduct was undertaken with conscious disregard of the

CLASS ACTION COMPLAINT

rights of the members of the class and was done with fraud, oppression, and/or malice.

63.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party members of the class to protect their interests.

64.     **Ascertainability.** Upon information and belief, Defendant keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer subscriptions, and general marketing programs. On information and belief, Defendant has one or more databases through which a significant majority of members of the class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

CLASS ACTION COMPLAINT

**VII.    CLAIMS FOR RELIEF**

<u>**FIRST CLAIM FOR RELIEF**</u>
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §17200, *et seq*.)**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

65.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

66.    Plaintiff brings this cause of action on behalf of himself and the California Class.

67.    California Business and Professions Code section 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

68.    A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

69.    Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

70.    The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations (16 CFR 233, *et seq.*), false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the

CLASS ACTION COMPLAINT

subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

16 C.F.R. § 233.1. The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisement and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1(e).

71.     California law also expressly prohibits false former pricing schemes like the one

employed by Defendant. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

72.     Moreover, Defendant's conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, *et seq*. More specifically, Defendant violated the CLRA provisions prohibiting businesses from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code §1770(a)(13). Defendant also violated §§ 1770(a)(5) and 1770(a)(29)(A) by failing to disclose that the Safeship Kit does not include digitization services and that additional fees would need to be paid to receive digitization services.

73.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

74.     Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive pricing scheme by advertising and representing false "regular" prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendant's deceptive marketing practice gave consumers the false impression that Defendant's products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

CLASS ACTION COMPLAINT

75. Defendant also failed to adequately disclose that purchasing its Safeship Kit did not include any digitization services and that additional purchases would be required for digitization of tapes and photographs.

76. Defendant's acts and practices thus offended an established public policy, and Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

77. The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

78. A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

79. Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the reference prices of its products, which thereby misled and deceived customers into believing that they were buying products from Defendant at substantially marked down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were. Further, Defendant misled consumers into believing that its Safeship Kit included digitization services when it did not.

80. In addition, Defendant had a duty to disclose the truth about their pricing deception and that the Safeship Kit did not include digitization services. Defendant had a duty to disclose that the reference prices advertised and published on the Website were not, in fact, prices at which Defendant's products had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendant's products rarely (if ever) were offered at the advertised reference prices. Defendant had a duty to clearly disclose to consumers that additional purchases would be required beyond the Safeship Kit to receive any digitization services. Defendant,

19

CLASS ACTION COMPLAINT

however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

81. Plaintiff and each member of the California Class suffered an injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

82. Plaintiff and each member of the California Class were harmed by Defendant's conduct alleged herein, because Plaintiff and each member of the California Class would not have made their purchases or would not have paid as much as they did but for Defendant's misrepresentations.

83. Defendant was unjustly enriched by their misrepresentations, because those misrepresentations induced Plaintiff and each member of the California Class to make purchases they otherwise would not have made or pay more for those purchases than they otherwise would have paid.

84. Plaintiff and each member of the California Class were harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

85. Plaintiff and members of the California Class lack an adequate remedy at law.

86. Plaintiff, on behalf of himself and the members of the California Class, seeks restitution and disgorgement of all moneys received by Defendant through the conduct described above.

87. Plaintiff, on behalf of himself and the members of the California Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false reference prices in connection with their sale of products.

CLASS ACTION COMPLAINT

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE §17500, *et seq*.)**
**(By Plaintiff Against Defendant on Behalf of the California Class)**

88.     Plaintiff restates the foregoing paragraphs as if fully set forth herein.

89.     Plaintiff brings this cause of action on behalf of himself and the California Class.

90.     The FAL provides:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof. Code §17500.

91.     Another section of the FAL provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

92.     Here, Defendant routinely disseminated on the Website false reference prices for the products offered for sale on the Website, including to Plaintiff. Such statements of Defendant were untrue, or at the very least, were misleading. Among other things, Defendant rarely, if ever, offered its products on the Website at the reference prices displayed for each product. Further, Defendant rarely, if ever, offered products on the Website at the reference prices within the three

21
CLASS ACTION COMPLAINT

months immediately preceding the publication of the Reference Prices. Defendant thus misled customers, including Plaintiff, into believing that the reference prices are or were genuine original, retail, or former prices and that the "sale" prices relative to the published reference prices, in fact, reflected real and substantial discounts. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

93.     Defendant knew, or by the exercise of reasonable care should have known, that their dissemination of reference prices for the products it offered on the Website were untrue and/or misleading. Among other things, Defendant represented the reference prices in connection with the Defendant's products sold on the Website even though they knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the reference prices.

94.     Defendant also failed to adequately disclose that additional purchases would be required beyond the Safeship Kit to receive any digitization services, thereby misleading consumers into believe that they would be receiving digitization services with their purchase of Defendant's Safeship Kits.

95.     As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the California Class have suffered injury in fact and have lost money.

96.     Plaintiff and members of the California Class were harmed by Defendant's false and misleading advertising, because Plaintiff and each member of the California Class would not have made their purchase or would not have paid as much as they did but for Defendant's misrepresentations.

97.     Plaintiff and members of the California Class were harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

98.     Defendant was unjustly enriched by its misrepresentations, because those

CLASS ACTION COMPLAINT

misrepresentations induced Plaintiff and members of the California Class to make purchases they otherwise would not have made or pay more for those purchases than they otherwise would have paid.

99.    Plaintiff and members of the California Class lack an adequate remedy at law.

100.    As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all members of the California Class, and to enjoin Defendant from continuing their false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the California Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE §1750, *et seq.*)
#### (By Plaintiff Against Defendant on Behalf of the California Class)

101.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff brings this cause of action on behalf of himself and the California Class.

103.    The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code §1760.

104.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of their products on the Website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a). Additionally, the digitization services Defendant offers are "services" within the meaning of California Civil Code section 1761(b).

CLASS ACTION COMPLAINT

105. Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's products: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; "(9) Advertising goods or services with intent not to sell them as advertised"; "(13) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not"; and "(29) (A) Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) Taxes or fees imposed by a government on the transaction. (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code §1770(a)(9), (13), (16), (29)(A).

106. Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendant's merchandise was rarely, if ever, previously offered for sale and/or sold at the higher reference prices for a reasonably substantial period of time, (b) the reference prices Defendant advertises in connection with its products do not reflect genuine former or prevailing market prices, and (c) Defendant's use of struck-through prices, "regular" prices, and similar reference pricing formats falsely conveyed to consumers that the products were being offered at a meaningful discount from a bona fide higher price. Defendant misled consumers into believing that the Safeship Kit included digitization services and failed to disclose that additional purchases would be required to receive any digitization of tapes and photographs.

107. Plaintiff and members of the California Class were harmed by Defendant's violations, because they would not have made their purchase or would not have paid as much as they did but for Defendant's misrepresentations.

CLASS ACTION COMPLAINT

108.    Plaintiff and members of the California Class were harmed because the value they received from Defendant's falsely advertised products was less than the money they paid.

109.    Further, Plaintiff and members of the California Class were harmed because they did not receive the expected discount or benefit-of-the bargain advertised by Defendant.

110.    Plaintiff seeks an injunction for Defendant's violation of the CLRA to enjoin Defendant's methods, acts, and practices of deceiving customers through their false and misleading advertisements described above.

### FOURTH CLAIM FOR RELIEF
### FRAUD (INTENTIONAL MISREPRESENTATIONS)
### (By Plaintiff Against Defendant on Behalf of the California Class)

111.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff brings this cause of action on behalf of himself and the California Class.

113.    Defendant uniformly represented to all members of the California Class during the Class Period in connection with their products and services advertised on its Website that the regular price was higher than the offered price. Defendant made this uniform representation by displaying on the Website a reference price substantially higher than the offered selling price, which is marked down or discounted from the reference price by a specified percentage discount or dollar amount.

114.    Defendant's reference price representations are false. Among other things, Defendant's representations conveyed false information about the products Plaintiff and the California Class purchased, namely that the products they purchased had sold in the recent past for a reasonably substantial period of time at the higher reference price displayed on Defendant's Website and/or in the prevailing market. The truth is that Defendant rarely, if ever, previously offered for sale and/or sold those products at the higher reference price for any reasonably substantial period of time.

115.    Defendant knew that its representations were false when it made them, or at the very least, it made the representations recklessly and without regard for their truth. In other words, Defendant knew that the products Plaintiff and the California Class purchased had rarely, if ever,

sold at the substantially higher reference price displayed on the Website in the recent past and/or in the prevailing market.

116.   Defendant's representations were made with the intent that Plaintiff and the California Class rely on the false representations and spend money they otherwise would not have spent, purchase products they otherwise would not have purchased, and/or spend more money for a service or product than they otherwise would have absent the deceptive marketing scheme.

117.   Defendant engaged in this fraud to the Plaintiff and the California Class's detriment in order to increase Defendant's own sales and profits.

118.   Plaintiff and the California Class reasonably relied on Defendant's representations.

119.   Absent Defendant's misrepresentations, Plaintiff and the California Class would not have purchased the products they purchased from Defendant, or, at the very least, they would not have paid as much for the products as they ultimately did. Plaintiff and the California Class's reliance was a substantial factor in causing them harm.

120.   Further, Plaintiff and each member of the California Class was harmed by Defendant's use of false reference prices, because they did not receive the expected discount or benefit-of-the bargain advertised by Defendant.

121.   As a direct and proximate result of the above, Plaintiff and the California Class have suffered damages in an amount to be proven at trial.

122.   Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the California Class, and did so with fraud, malice, and/or oppression.

123.   Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the California Class.

124.   Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the California Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the California Class.

CLASS ACTION COMPLAINT

125. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

126. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

127. Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

128. Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase products on the Website.

129. The contracts provided that Plaintiff and class members would pay Defendant for the products ordered.

130. The contracts further required that Defendant provide Plaintiff and class members with products that have a market value equal to the regular prices displayed on the Website, and the discount equal to the difference between the price paid, and the regular prices advertised. These were specific and material terms of the contract.

131. Plaintiff and class members paid Defendant for the products they ordered, and satisfied all other conditions of their contracts.

132. Defendant breached their contracts with Plaintiff and class members by failing to provide products that had a market value equal to the regular price displayed on the Website, by failing to provide the promised discount and by failing to provide any digitization services with the purchase of the Safeship Kit.

133. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

134. For the breach of contract claims, Plaintiff seeks all damages available including

expectation damages or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's breach.

### SIXTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

135.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

136.   Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

137.   Defendant, as the marketer, distributor, supplier, and/or seller of its products, issued material, written warranties by advertising that the products offered for sale on the Website had a prevailing market value equal to the reference price. This was an affirmation of fact about the products (i.e., a representation about the market value) and a promise relating to the goods.

138.   This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

139.   In fact, Defendant's stated market values were not the prevailing market values. Thus, the warranty was breached.

140.   Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the products if they had known that the warranty was false, (b) they overpaid for the products because the products were sold at a price premium due to the warranty, and/or (c) they did not receive the products as warranted that they were promised.

141.   For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's breach.

### SEVENTH CLAIM FOR RELIEF
### QUASI-CONTRACT/UNJUST ENRICHMENT
**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

142.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

28

CLASS ACTION COMPLAINT

143.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

144.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Defendant's products and to pay a price premium for these products.

145.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

146.    Plaintiff and the class seek restitution, and in the alternative, rescission.

147.    For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## EIGHTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
**(By Plaintiff Against Defendant on Behalf of the Nationwide Class)**

148.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

149.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Class.

150.    As alleged in detail above, Defendant made false representations to Plaintiff and class members concerning their regular prices and discounts. Defendant also made misleading representations regarding the services that would be included with the Safeship Kit.

151.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made. Like any company, Defendant tracks its own sales and its own transactions. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

152.    Defendant intended that Plaintiff and class members rely on these representations

and Plaintiff and class members read and reasonably relied on them.

153. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendant's products.

154. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

155. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the products had they known that the representations were false, (b) they overpaid for the products because the products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

156. Plaintiff seeks all damages available, including expectation damages.

## VIII.   PRAYER FOR RELIEF

157. WHEREFORE, Plaintiff prays for judgment against Defendant on behalf of himself and those similarly situated as follows:

### ON THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200 et seq.)

A. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising.

C. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

D. For an award of equitable and declaratory relief.

E. For pre and post judgment interest and costs of suit incurred herein.

F. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G. For such other and further relief as the Court may deem just and proper.

**ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.*** 

H. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

I. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

J. For an award of restitution and disgorgement of moneys paid that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

K. For an award of equitable and declaratory relief.

L. For pre and post judgment interest and costs of suit incurred herein.

M. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

N. For such other and further relief as the Court may deem just and proper.

**ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)**

O. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

P. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and pricing practices.

CLASS ACTION COMPLAINT

Q.      For pre and post judgment interest and costs of suit incurred herein.

R.      For an award of equitable and declaratory relief.

S.      For damages in an amount to be proven at trial.

T.      For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

U.      For such other and further relief as the Court may deem just and proper.

**ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE MISREPRESENTATIONS)**

V.      For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

W.      For rescission and revocation.

X.      For compensatory damages in an amount to be proven at trial.

Y.      For punitive damages in an amount sufficient to punish Defendant and to deter it from engaging in wrongful conduct in the future.

Z.      For pre and post judgment interest and costs of suit incurred herein.

AA.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

BB.     For such other and further relief as the Court may deem just and proper.

**ON THE FIFTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT**

CC.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

DD.     For compensatory damages in an amount to be proven at trial.

EE.     For pre and post judgment interest and costs of suit incurred herein.

FF.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

32

CLASS ACTION COMPLAINT

GG.   For such other and further relief as the Court may deem just and proper.

**ON THE SIXTH CLAIM FOR RELIEF FOR BREACH OF EXPRESS WARRANTY**

HH.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

II.   For compensatory damages in an amount to be proven at trial.

JJ.   For pre and post judgment interest and costs of suit incurred herein.

KK.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

LL.   For such other and further relief as the Court may deem just and proper.

**ON THE SEVENTH CLAIM FOR RELIEF FOR QUASI-CONTRACT/UNJUST ENRICHMENT**

MM.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

NN.   For restitution in an amount to be proven at trial.

OO.   For rescission and revocation.

PP.   For pre and post judgment interest and costs of suit incurred herein.

QQ.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

RR.   For such other and further relief as the Court may deem just and proper.

**ON THE EIGHTH CLAIM FOR RELIEF FOR NEGLIGENT MISREPRESENTATION**

SS.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

TT.   For rescission and revocation.

UU.   For compensatory damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT

VV.    For pre and post judgment interest and costs of suit incurred herein.

WW.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

XX.    For such other and further relief as the Court may deem just and proper.

Dated: July 6, 2026                                        BEN-MEIR LAW GROUP


                                                    By:    /s/ David Ben-Meir
                                                           David Ben-Meir

                                                    Attorneys for Plaintiff


## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all triable issues.


Dated:  July 6, 2026                                       BEN-MEIR LAW GROUP


                                                    By:    /s/ David Ben-Meir
                                                           David Ben-Meir

                                                    Attorneys for Plaintiff

CLASS ACTION COMPLAINT

# Exhibit 1

6/2/26, 4:49 PM
Case 3:26-cv-06892   Document 1   Filed 07/06/26   Page 36 of 89   Convert Your Memories to Digital in 3 Easy Steps | iMemories

The Wayback Machine - https://web.archive.org/web/20240617202259/https://www.imemories.com/works

 iMemories®



SEND MEMORIES IN

# WATCH EMOTIONS COMEPOURING OUT



### MAIL YOUR MEMORIES

Pack your memories in our crush-proof SafeShip Kit with a prepaid label. Then take it to FedEx and let your old formats take flight!

**GET YOUR KIT**

Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 37 of 89



## TEAM OF TECH EXPERTS

Our 50,000 square foot facility is where over 200 memory pros digitize thousands of formats every day. We've never lost a single memory in 15 years.

PEACE OF MIND



## EVERYTHING RETURNED

We send back your original formats along with their digitally-foreverized versions so you can laugh and cry with family and friends whenever you want.

HOW TO ENJOY

6/2/26, 4:49 PM

Case 3:26-cv-06892    Convert Your Memories to Digital in 3 Easy Steps | iMemories3 of 89
Document 1    Filed 07/06/26    Page 38 of 89

$14.99 (Reg. $29.99)

# SAFESHIP KIT

The safe and easy way to ship your memories for digital conversion. Includes specialty designed crush-proof box, waterproof bags, shock resistant bubble cushions, and free shipping to iMemories via FedEx.

ORDER YOUR SAFESHIP KIT

SHIP USING MY OWN BOX +



SEE SIZE AND WHAT'S INSIDE +



INFORMED AT EVERY STEP

## YOUR MEMORIES ARE ALWAYS TOP OF MIND

Nothing is a mystery at iMemories. We care for your videotapes, movie films, and photos like they're our own, and we'll be in contact throughout the digitization process. Stay informed in real time via your own Order Status page plus regular email updates. We'll let you know when:

- iMemories receives your home movies & photos
- You approve and pay for your order
- iMemories starts digitizing your memories
- iMemories completes your order
- Your originals are sent back
- Your DVDs or USBs are shipped

Only iMemories provides this peace of mind.



### THE IMEMORIES APP

## STREAMING ON ANY SCREEN

With the iMemories App, you can truly immerse yourself in the world of treasured family movies from any screen at any time. The iMemories app makes it easy to stream & share thousands of moments across your TV, tablet, laptop and phone.

**LEARN ABOUT OUR APP +**

*Requires iMemories Cloud subscription plan



SOMETHING TO HOLD ONTO

## DVD & USB STORAGE

In addition to streaming with the iMemories app, we offer customizable DVDs and USB drives for physically preserving your favorite moments in formats you can still play today. Surprise everyone at your next family gathering with the gift of memories!

---

What formats do you convert?

---

Is the iMemories app free?

---

How do I share my memories with my family?

---

Can iMemories convert recorded TV shows or Hollywood movies from VHS tapes?

---

Will you return my originals



"I had 18 decades of old reel to reel family films. Sent to iMemories . SO

EASY and very reasonably priced!"

- Sue, Google Review

**READ MORE REVIEWS**



800-845-7986
service@imemories.com
9160 E. Del Camino Drive, Suite B1
Scottsdale, AZ 85258

   

### How It Works

How to Digitize

What We Digitize

Our App

iMemories Cloud

### Resources

Pricing

FAQs

Order Status

Turnaround Time

Contact Us

### About

About Us

Reviews

Stories

Careers

Blog

FAST COMPANY



**Most Innovative
Companies** 2023

©2024 iMemories Inc. All rights reserved.

Terms    Privacy

# Exhibit 2

Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 44 of 89

The Wayback Machine - https://web.archive.org/web/20240902222304/https://www.imemories...

ORDER NOW                                                                SIGN UP    LOGIN

 iMemories®



**WATCH VIDEO** ▶

  

## YOU'VE NEVER SEEN THESE MOMENTS LIKE THIS

# LOOKING BACK NEVER LOOKED SO GOOD

Her first steps. Your wedding dance. That summer trip you'll never forget. If decades-old technology is preventing you from watching your most precious memories again, we can help. Just ship your old home movies and photos to

iMemories and we'll give them new life as streaming content you can enjoy on all your devices.



Only iMemories lets you stream hours of digitally-restored home movies and photo albums directly from your TV. With generations of content available on demand, it's never been more fun to watch family memories with the people who helped make them.

**SEE THE IMEMORIES DIFFERENCE >**





# HOW TO DIGITIZE A LIFETIME OF MEMORIES



## PACK YOUR MEMORIES

Simply gather your older home movies and photos together in your SafeShip Kit and leave the rest to us. No pre-sorting or labeling necessary!



## WE DIGITIZE WITH LOVE

Our team treats your memories like their own and carefully converts them into modern digital formats that generations can experience together.



## ENJOY TOGETHER

Instantly stream memories on your Smart TV with the iMemories app just like you watch your favorite shows and movies on streaming apps like Netflix, HBO Max, Disney+ and Hulu.

## START DIGITIZING >



# FROM YOUR ATTIC TO OUR APP

Other companies convert your old formats into DVD's that require obsolete DVD players to view. With the iMemories app, you can truly immerse yourself in the world of treasured family movies from any screen at any time. See how iMemories makes it easy to stream & share thousands of moments across your TV, tablet, laptop and phone.

**LEARN ABOUT OUR APP >**

# LIKE NETFLIX, ONLY WITH BETTER ORIGINAL

# CONTENT

## FREE NO OBLIGATION QUOTE

Get a price quote upfront before you buy. We also include free repairs and scene edits.

## YOUR MEMORIES ARE SAFE

We've digitized over 100 million memories and never lost or damaged a single one. All your originals are also returned to you.

## REAL-TIME UPDATES

We are in constant communication with you about the status of your digitization. Get regular email updates so you're in the loop.

## WE GET IT DONE FAST

No one digitizes faster than iMemories. In just 2-3 weeks you'll have access to your memories on our app to share with loved ones.

## SATISFACTION GUARANTEE

Memories should make you happy, and so should your experience with us. If you're not thrilled, we'll make it right.

## 17 YEARS EXPERIENCE

Our team of over 200 digital restoration specialists has been trusted by over 1 million customers to get the job done right.



AN UNFORGETTABLE EXPERIENCE

# OVER 1 MILLION CUSTOMERS LOVE WHAT THEY SEE





"We have had a great experience. These are invaluable to our family!"

**– EDWARD**

FOREVERIZING YOUR MEMORIES

# DIGITAL CONVERSION PRICING



## VIDEOTAPES



## $29.99
per tape

**After savings:**

## $14.99

Use code **SAVE50** to save



50% OFF

## MOVIE FILMS

## $29.99
per 50 ft.

**After savings:**

## $14.99

Use code **SAVE50** to save



**50% OFF**

### PHOTOS

~~$.99~~

per photo

**After savings:**

## $.49

Use code **SAVE50** to save

## CHOOSE WHAT YOU'LL GET BACK

# HOW TO VIEW AND SHARE YOUR DIGITIZED MEMORIES

After our digital restoration specialists have finished, there are 4 ways to view and share your digitized memories.

**DIGITIZE MY MEMORIES >**



## OUR APP

Stream, share and enjoy it all with iMemories Cloud for only $7.99/month or $49.99/year.

## DIGITAL DOWNLOAD

Download and save all of your digital masters for FREE!

## USB THUMB DRIVE

Get all of your digital masters on a USB thumb drive starting at $39.99 per USB (8GB).

## DVD OR BLU-RAY

Get all of your digitized memories in watchable format on DVD or Blu-ray for $19.99 per disc.

$14.99 (Reg. $29.99)

# SAFESHIP KIT

The safe and easy way to ship your memories for digital conversion. Includes specialty designed crush-proof box, waterproof bags, shock resistant bubble cushions, and free shipping to iMemories via FedEx.

ORDER YOUR SAFESHIP KIT

SHIP USING MY OWN BOX +



SEE SIZE AND WHAT'S INSIDE +



800-845-7986

service@imemories.com

9160 E. Del Camino Drive, Suite B1
Scottsdale, AZ 85258

    

## How It Works

How to Digitize

What We Digitize

Our App

iMemories Cloud

## Resources

Pricing

FAQs

Order Status

Turnaround Time

Contact Us

## About

Digitize Your Home Videos, Film Reels, & Photos | iMemories

About Us

Reviews

Stories

Careers

Blog



©2024 iMemories Inc. All rights reserved.
Terms    Privacy

# Exhibit 3

The Wayback Machine - https://web.archive.org/web/20240904085950/https://www.imemorie…

ORDER NOW

SIGN UP   LOGIN



☰



WATCH VIDEO ▶

  

## YOU'VE NEVER SEEN THESE MOMENTS LIKE THIS

# LOOKING BACK NEVER LOOKED SO GOOD

Her first steps. Your wedding dance. That summer trip you'll never forget. If decades-old technology is preventing you from watching your most precious memories again, we can help. Just ship your old home movies and photos to

iMemories and we'll give them new life as streaming content you can enjoy on all your devices.

# FAST COMPANY

## iMemories recognized as Fast Company's 2023 Most Innovative Companies



# YOUR MEMORIES ARE JOY WORTHY. WE MAKE THEM BINGE WORTHY.

Only iMemories lets you stream hours of digitally-restored home movies and photo albums directly from your TV. With generations of content available on demand, it's never been more fun to watch family memories with the people who helped make them.

**SEE THE IMEMORIES DIFFERENCE >**





# HOW TO DIGITIZE A LIFETIME OF MEMORIES



## PACK YOUR MEMORIES

Simply gather your older home movies and photos together in your SafeShip Kit and leave the rest to us. No pre-sorting or labeling necessary!



## WE DIGITIZE WITH LOVE

Our team treats your memories like their own and carefully converts them into modern digital formats that generations can experience together.



## ENJOY TOGETHER

Instantly stream memories on your Smart TV with the iMemories app just like you watch your favorite shows and movies on streaming apps like Netflix, HBO Max, Disney+ and Hulu.

## START DIGITIZING >



# FROM YOUR ATTIC TO OUR APP

Other companies convert your old formats into DVD's that require obsolete DVD players to view. With the iMemories app, you can truly immerse yourself in the world of treasured family movies from any screen at any time. See how iMemories makes it easy to stream & share thousands of moments across your TV, tablet, laptop and phone.

**LEARN ABOUT OUR APP >**

# LIKE NETFLIX, ONLY WITH BETTER ORIGINAL

# CONTENT

## FREE NO OBLIGATION QUOTE

Get a price quote upfront before you buy. We also include free repairs and scene edits.

## YOUR MEMORIES ARE SAFE

We've digitized over 100 million memories and never lost or damaged a single one. All your originals are also returned to you.

## REAL-TIME UPDATES

We are in constant communication with you about the status of your digitization. Get regular email updates so you're in the loop.

## WE GET IT DONE FAST

No one digitizes faster than iMemories. In just 2-3 weeks you'll have access to your memories on our app to share with loved ones.

## SATISFACTION GUARANTEE

Memories should make you happy, and so should your experience with us. If you're not thrilled, we'll make it right.

## 17 YEARS EXPERIENCE

Our team of over 200 digital restoration specialists has been trusted by over 1 million customers to get the job done right.



AN UNFORGETTABLE EXPERIENCE

# OVER 1 MILLION CUSTOMERS LOVE WHAT THEY SEE





"We have had a great experience. These are invaluable to our family!"

**- EDWARD**

FOREVERIZING YOUR MEMORIES

# DIGITAL CONVERSION PRICING



## VIDEOTAPES



## $29.99
per tape

**After savings:**

## $14.99

Use code **SAVE50** to save



**50% OFF**

## MOVIE FILMS

## $29.99
per 50 ft.

**After savings:**

**$14.99**

Use code **SAVE50** to save



**50% OFF**

## PHOTOS

~~$.99~~
per photo

**After savings:**

**$.49**

Use code **SAVE50** to save

## CHOOSE WHAT YOU'LL GET BACK

# HOW TO VIEW AND SHARE YOUR DIGITIZED MEMORIES

After our digital restoration specialists have finished, there are 4 ways to view and share your digitized memories.

**DIGITIZE MY MEMORIES >**



### OUR APP

Stream, share and enjoy it all with iMemories Cloud for only $7.99/month or $49.99/year.

### DIGITAL DOWNLOAD

Download and save all of your digital masters for FREE!

### USB THUMB DRIVE

Get all of your digital masters on a USB thumb drive starting at $39.99 per USB (8GB).

Digitize Your Home Videos, Film Reels, & Photos | iMemories

**DVD OR BLU-RAY**

Get all of your digitized memories in watchable format on DVD or Blu-ray for $19.99 per disc.

$14.99 (Reg. $29.99)

# SAFESHIP KIT

The safe and easy way to ship your memories for digital conversion. Includes specialty designed crush-proof box, waterproof bags, shock resistant bubble cushions, and free shipping to iMemories via FedEx.

ORDER YOUR SAFESHIP KIT

SHIP USING MY OWN BOX +



SEE SIZE AND WHAT'S INSIDE +



800-845-7986

service@imemories.com

9160 E. Del Camino Drive, Suite B1
Scottsdale, AZ 85258

    

**How It Works**

How to Digitize

What We Digitize

Our App

iMemories Cloud

**Resources**

Pricing

FAQs

Order Status

Turnaround Time

Contact Us

**About**

About Us

Reviews

Stories

Careers

Blog



©2024 iMemories Inc. All rights reserved.

Terms    Privacy

# Exhibit 4

Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 74 of 89

The Wayback Machine - https://web.archive.org/web/20240912052337/http://www.imemories.com/works





SEND MEMORIES IN

# WATCH EMOTIONS COMEPOURING OUT



### MAIL YOUR MEMORIES

Pack your memories in our crush-proof SafeShip Kit with a prepaid label. Then take it to FedEx and let your old formats take flight!

GET YOUR KIT

Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 75 of 89



### TEAM OF TECH EXPERTS

Our 50,000 square foot facility is where over 200 memory pros digitize thousands of formats every day. We've never lost a single memory in 15 years.

PEACE OF MIND



### EVERYTHING RETURNED

We send back your original formats along with their digitally-foreverized versions so you can laugh and cry with family and friends whenever you want.

HOW TO ENJOY

$14.99 (Reg. $29.99)

# SAFESHIP KIT

The safe and easy way to ship your memories for digital conversion. Includes specialty designed crush-proof box, waterproof bags, shock resistant bubble cushions, and free shipping to iMemories via FedEx.

ORDER YOUR SAFESHIP KIT

SHIP USING MY OWN BOX +



SEE SIZE AND WHAT'S INSIDE +



INFORMED AT EVERY STEP

6/2/26, 4:43 PM
Case 3:26-cv-06892   Document 1   Filed 07/06/26   Page 77 of 89
Convert Your Memories to Digital in 3 Easy Steps | iMemories

# YOUR MEMORIES ARE ALWAYS TOP OF MIND

Nothing is a mystery at iMemories. We care for your videotapes, movie films, and photos like they're our own, and we'll be in contact throughout the digitization process. Stay informed in real time via your own Order Status page plus regular email updates. We'll let you know when:

- iMemories receives your home movies & photos
- You approve and pay for your order
- iMemories starts digitizing your memories
- iMemories completes your order
- Your originals are sent back
- Your DVDs or USBs are shipped

Only iMemories provides this peace of mind.



THE IMEMORIES APP

# STREAMING ON ANY SCREEN

With the iMemories App, you can truly immerse yourself in the world of treasured family movies from any screen at any time. The iMemories app makes it easy to stream & share thousands of moments across your TV, tablet, laptop and phone.

**LEARN ABOUT OUR APP +**

*Requires iMemories Cloud subscription plan



SOMETHING TO HOLD ONTO

## DVD & USB STORAGE

In addition to streaming with the iMemories app, we offer customizable DVDs and USB drives for physically preserving your favorite moments in formats you can still play today. Surprise everyone at your next family gathering with the gift of memories!

---

What formats do you convert?

---

Is the iMemories app free?

---

How do I share my memories with my family?

---

Can iMemories convert recorded TV shows or Hollywood movies from VHS tapes?

---

Will you return my originals

★ ★ ★ ★ ★

"I had 18 decades of old reel to reel family films. Sent to iMemories . SO

6/2/26, 4:43 PM
Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 79 of 89
Convert Your Memories to Digital in 3 Easy Steps | iMemories

EASY and very reasonably priced!"

- Sue, Google Review

READ MORE
REVIEWS



800-845-7986
service@imemories.com
9160 E. Del Camino Drive, Suite B1
Scottsdale, AZ 85258

   

**How It Works**

How to Digitize

What We Digitize

Our App

iMemories Cloud

**Resources**

Pricing

FAQs

Order Status

Turnaround Time

Contact Us

**About**

About Us

Reviews

Stories

Careers

Blog

FAST COMPANY



**Most Innovative Companies** 2023

©2024 iMemories Inc. All rights reserved.

Terms     Privacy

# Exhibit 5

The Wayback Machine - https://web.archive.org/web/20250124093239/http://www.imemories.c...

ORDER NOW                                                SIGN UP    LOGIN

 iMemories®

## DIGITIZE YOUR MEMORIES

# HOW IT WORKS

Digitizing your old home movies and photos with iMemories is easy. Follow these four steps to turn the unplayable into the unforgettable thanks to the magic of our process.

1. Send us your home movies & photos
2. Relax while our experts digitize your memories
3. Upscale and enhance your memories with McKenzie™ AI
4. Stream & share your memories on any device



6/2/26, 4:49 PM
Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 83 of 89
Convert Your Memories to Digital in 3 Easy Steps | iMemories

# 1. PACK & SEND YOUR MEMORIES

To get started, gather your old home movies, tapes and photos together and ship them to iMemories. Don't worry about labeling or organizing anything—simply place your memories in a specialty SafeShip Kit that includes a crush-proof box, waterproof bags and free shipping. You can also use your own box if you prefer. When your Kit is ready, ship it to us and we'll send a confirmation email upon receipt.

What formats do you accept?

What is a SafeShip Kit?

Do I get my movies and photos back?

Case 3:26-cv-06892    Document 1    Filed 07/06/26    Page 84 of 89



## 2. WE DIGITIZE YOUR CONTENT

Our 50,000 square foot facility in Scottsdale, Arizona, is home to over 250 digitization experts. Our world-class team remasters thousands of files every day from over a half century's worth of different formats—and we've never lost a memory in over 20 years. When your box arrives, we'll inventory your files and send a quote for your order, and you can choose which digital formats you'd like to receive.

How long does it take? Can I track my order status?

How do I use a promo code?

How do you calculate my price?



### 3. WE ENHANCE WITH AI

McKenzie AI is the biggest breakthrough in memory digitization, and only iMemories offers this game-changing feature. We use proprietary machine learning to seamlessly enhance the clarity, color and detail of your footage, letting you experience memories as they really happened.

Is there an additional fee for AI?

Is it private & secure?

How much more quality & resolution do I get?

$14.99 (Reg. $29.99)

# SAFESHIP KIT

The safe and easy way to ship your memories for digital conversion. Includes specialty designed crush-proof box, waterproof bags, shock resistant bubble cushions, and free shipping to iMemories via FedEx.

ORDER YOUR SAFESHIP KIT

SHIP USING MY OWN BOX +



SEE SIZE AND WHAT'S INSIDE +

# FREQUENTLY ASKED QUESTIONS

What formats do you convert?

How do I get the app? Is it free?

Will the app work on my TV?

Do you back up my digitized memories?

## Can I order more DVDs and USBs?



800-845-7986
service@imemories.com
9160 E. Del Camino Drive, Suite B1
Scottsdale, AZ 85258

### How It Works

How to Digitize

What We Digitize

AI Enhancement

Our App

iMemories Cloud

### Resources

Pricing

FAQs

Order Status

Turnaround Time

Contact Us

### About

About Us

Reviews

Stories

Careers

Blog



©2025 iMemories Inc. All rights reserved.

Terms    Privacy